UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JULIE KELLY,

                               Plaintiff,

         -against-

MARK GASTON PEARCE, KENT HIROZAWA,
PHILIP MISCIMARRA, HARRY JOHNSON, III,
and LAUREN McFERRAN,

                             Defendants.
------------------------------------------------------------------ x

15-CV-5117 (ALC)

<u>OPINION
& ORDER</u>

ANDREW L. CARTER, JR., District Judge:

      Before this court are plaintiff's motion for injunctive relief and defendants' motion to dismiss this action. Plaintiff seeks an order vacating a decision from a Regional Director of the National Labor Relations Board ("the Board" or "the NLRB") and enjoining the NLRB from conducting unit clarification proceedings for newly opened facilities that might be governed by plaintiff's collective bargaining agreements. For the reasons that follow, defendant's motion to dismiss for lack of subject matter jurisdiction is granted. Plaintiff's motion for injunctive relief is denied.

## BACKGROUND

      The following facts are taken from the allegations contained in the complaint and the parties' declarations.[1] They are construed in the light most favorable to plaintiff.

      Plaintiff Julie Kelly is the General Manager of the New York-New Jersey Regional Joint Board, Workers United, A/W SEIU ("the Union" or "the Joint Board"). Compl. ¶ 4. Pursuant to Section 2(5) of the National Labor Relations Act ("NLRA"), this Joint-Board represents

---

[1] Thomas M. Murray, counsel for plaintiff, submitted a declaration in support of his motion for injunctive relief, ("Murray Decl."), ECF No. 25. Murray also submitted a declaration in opposition to the motion to dismiss ("Murray Supp. Decl."), ECF No. 46.

employees who work for retail and manufacturing businesses. *Id.* Local 340 is a subordinate body that represents retail store employees and Local 25 is a subordinate body that represents tailors and other employees performing alteration work in retail stores and alteration shops. *Id.* Defendants are the board members to the NLRB.[2] The NLRB are granted authority to enforce the NLRA through a quasi-judicial forum where they review decisions made in the agency's administrative hearings. *Id.* ¶ 5.

Local 340 and Local 25 are parties to collective bargaining agreements ("CBAs") with Brooks Brothers Group, Inc. ("Brooks Brothers" or "the Employer"), a corporation operating luxury retail stores. *Id.* ¶¶ 6-7. In the relevant period, the CBA between Local 340 and Brooks Brothers described the bargaining unit as follows:

> The Employer recognizes the Union as the sole and exclusive collective bargaining agent of all: (i) selling personnel and expediters, housekeeping, shipping, receiving, floor cashier, call desk, on-floor stock, concierge, door greeter, off-floor stock, visual personnel, fitter-tailors [], cash office personnel and mailroom personnel, excluding all selling and support supervisory personnel, at its retail stores at Madison Avenue, Liberty Plaza, Broadway, Bleecker Street and Rockefeller Center, New York City, Northern Boulevard, Manhasset, L.I., West Post Road, Eastchester, N.Y., The Westchester, White Plains, N.Y., Roosevelt Field, L.I., Huntington, L.I., Southampton, L.I., West Nyack, N.Y., Stamford, Conn., and any other retail store(s) opened during the terms of this Agreement operated by the Employer under the name "Brooks Brothers" in the City of New York and in the Counties of Nassau, Suffolk, Rockland and Westchester only . . . .

*Id.* ¶ 7. The CBA between Local 25 and Brooks Brothers contained similar clauses recognizing the bargaining unit and describing how to account for recently opened stores ("recognition clause" and "after-acquired store clause" respectively).

> RECOGNITION
> The Company recognizes the Union as the exclusive bargaining representative for all regular full-time and regular part-time employees scheduled to work twenty-four (24) hours or more per week performing fitting, altering, finishing, pressing and central alterations shop clerical duties on its premises at the Company's Long Island City central alterations shop and the Madison Avenue, Liberty Plaza,

---

[2] Since the filing of this action, Defendant Harry Johnson's term with the NLRB expired. ECF No. 49.

> Broadway, Bleeker Street [sic], Southampton, Rockefeller Center, Scarsdale, Manhasset, Roosevelt Field, Huntington and West Nyack retail stores . . . .
>
> ACCRETION
> Should any new retail store(s) open during the term of this Agreement in the City of New York and in the Counties of Nassau, Suffolk, Rockland and Westchester, and be operated by the Company under the name "Brooks Brother," [sic] the Company shall agree to recognize the union as set forth in Article 1, Recognition.

Id. ¶¶ 9-10.

On February 28, 2011, Brooks Brothers opened a new retail store at 1180 Madison Avenue in New York City. *Id.* ¶ 11. Believing that this store was subject to the after-acquired store clause, plaintiff demanded that Brooks Brothers recognize the unions as the representatives for the employees of this new location. *Id.* ¶ 12. Brooks Brothers refused to comply with the Union's demand, leading to a flurry of litigation.[3] *Id.* Notably, Brooks Brothers filed a petition with the NLRB to clarify the bargaining unit ("unit clarification petition"). *Id.* ¶ 13. This petition sought to exclude all employees at the 1180 Madison Avenue store from the Local 340 and Local 25 bargaining units. *Id.* On October 12, 2012, the Board held a hearing on this petition. *Id.* ¶ 17. Brooks Brothers asserted that it did not have an obligation to recognize the Unions unless they could demonstrate that they had majority support among the employees of the store. *Id.* ¶ 18. Conversely, the Unions asserted that the store was an accretion to the larger bargaining unit and that it did not have to demonstrate majority support. *Id.*

---

[3] The Union filed a grievance against Brooks Brothers alleging a violation of the Local 340 CBA on or about May 27, 2011. Compl. ¶ 13. The Union filed a demand for arbitration on July 6, 2011 regarding this same unit. *Id.* ¶ 12. As discussed below, Brooks Brothers filed a unit clarification petition on August 11, 2011. *Id.* ¶ 13. On November 22, 2011, Brooks Brothers also filed an unfair labor practice charge alleging that the arbitration proceeding initiated by the Union violated the NLRA because the Union did not demonstrate that it had majority support in the new store located at 1180 Madison Avenue. *Id.* In August 2011, the Union filed an unfair labor practice charge of its own, alleging that Brooks Brothers violated the NLRA by failing to recognize Local 340 and Local 25 at the 1180 Madison Avenue store. *Id.* ¶ 14. In June 2012, an arbitrator issued an award and an opinion granting the Union's grievance. *Id.* ¶ 15. Soon after, the Union filed a petition to confirm the award in the district court for the Southern District of New York. *Id.* ¶ 16. That petition is currently pending before the undersigned in a separate matter. *See* 12-cv-5006, ECF No. 1.

3

While the petition was pending, the Union and Brooks Brothers engaged in negotiations for the successor CBA agreements for Local 340 and Local 25. *Id.* ¶ 18. During these discussions, the Union agreed to limit No-Strike clauses of the agreement in exchange for preserving the after-acquired store clauses. *Id.* ¶ 21.

On December 18, 2015, the Regional Director of the NLRB in Region 2 issued a decision in favor of Brooks Brothers holding that an accretion was inappropriate. *Id.* ¶ 22. In reaching this determination, the Regional Director provided a thorough analysis of the following question: did the employees at the 1180 Madison Avenue store share an overwhelming community of interest with employees of the stores represented by Local 340 and Local 25. Murray Decl., Ex. A, at 28-38.

On the topic of majority support, the Regional Director provided little commentary. She noted that in the past Brooks Brothers had recognized the unions as representatives of employees in new stores opened in the New York City area without a showing of majority interest in the Union among the employees. *Id.* at 3. She noted that, nonetheless, the Union had typically obtained and demonstrated a majority showing of interest at the new stores. *Id.* Finally, the Regional Director found that the Union did not at any point present Brooks Brothers with a showing of majority support among employees at the 1180 Madison Avenue store. *Id.* at 5.

The Regional Director's decision also addressed two alternate challenges posed by the Union. The Union claimed that (1) the unit clarification would compel a concession by the Union on the scope of the bargaining unit and (2) Brooks Brothers waived their right to use Board processes on issues of employee placement when they agreed to the CBAs' terms, namely the after-acquired store and general arbitration clauses. *Id.* at 37-38. The Regional Director distinguished the cases cited by the Union on the second point, and noted, *inter alia,* that the

Union and the Employer did not explicitly agree to submit issues to an arbitrator. For the first point, she noted:

> [Unlike the cases cited by the Union, t]he petition here does not relate to an employer's attempt to transfer work out of a unit of represented employees. It concerns whether or not a group of unrepresented employees at a new store should be accreted into an existing unit of a subset of the Employer's stores because they lack any separate identity. This decision does not require a concession from the Unions regarding scope. They are free to file representation petitions seeking to add these employees into their represented units through an election procedure. If the employees at 1180 Madison were to select the Unions to represent them and the Employer subsequently refused to bargain with the Unions over the employees as members of the Local 340 and Local 25 units, that refusal might be unlawful and the issue of unit scope might be relevant in any investigation and litigation. It is not at issue in this case.

*Id.* at 38.

After the Board's decision, the Union secured majority support among the employees that would constitute the Local 340 unit at the 1180 Madison Avenue store. Compl. ¶ 25. Brooks Brothers refused to recognize the Union as a representative without a determination of majority support through a NLRB election. *Id.* ¶ 27. On April 21, 2015, the Union sent the NLRB a letter advising it that the Union represents a majority of employees in the Local 340 unit at the 1180 Madison Avenue store and requesting that the Regional Director reconsider her decision and dismiss the petition. *Id.* ¶ 28. On September 21, 2015, the Board issued an Order denying the Request for Review of the Unit Clarification Decision.[4]  Murray Supp. Decl., Ex. E.

On June 30, 2015, plaintiff initiated the instant action against the Board members. The complaint alleges a violation of Section 8(d) of the NLRA, which prohibits the Board from compelling any party to make a concession or agree to a proposal. Plaintiff alleges that the

---

[4] In a footnote of this Order, the Board noted: "Our denial of review does not preclude the Unions from seeking to include these employees in the current bargaining units, either through a showing of majority status pursuant to an additional stores contractual provision or by filing a representation petition." Murray Supp. Decl., Ex. E (citations omitted).

5

Board's decision clarifying the 1180 Madison Avenue store out of the Local 340 and Local 25 bargaining units amounted to a compelled concession that Brooks Brothers was unable to achieve in bargaining. The complaint seeks a preliminary and permanent injunction vacating the unit clarification decision of the Board and a permanent injunction restraining and enjoining the NLRB from conducting unit clarification proceedings concerning newly opened facilities where there is a collective bargaining agreement in effect containing an after-acquired stores clause.

On July 10, 2015, plaintiff filed a motion for preliminary injunction and memorandum of law ("Pl.'s Mem.") seeking the same relief outlined in the complaint. In a July 27, 2015 telephone status conference with the Honorable Colleen McMahon, the parties agreed to convert this motion to a motion for permanent injunctive relief. On August 18, 2015, defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 39. The memorandum of law in support of this motion ("Defs.' Mem.") also served as opposition to plaintiff's motion for injunctive relief. ECF No. 40. Thereafter, plaintiff filed a reply to the motion for injunctive relief that also served as opposition to the defendants' motion to dismiss ("Pl.'s Opp."). ECF No. 45. Defendants filed a reply to their motion to dismiss ("Defs.' Reply") on October 19, 2015. ECF No. 48. On October 26, 2015, the case was reassigned to the undersigned as related to a separate matter.

## STANDARD OF REVIEW

**Motion to Dismiss on Jurisdiction**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When considering a motion to dismiss for lack of subject matter jurisdiction, the court must accept as true all factual allegations in the complaint

and must draw all reasonable inferences in favor of the plaintiff. *Id.* However, unlike with a Rule 12(b)(6) motion, when considering a Rule 12(b)(1) motion, "a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *Makarova*, 201 F.3d at 113.

**Motion to Dismiss for Failure to State a Claim**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* For the purposes of a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

To decide a Rule 12(b)(6) motion, the court "may consider facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits,

and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks and citation omitted). The Court may also consider "matters of which judicial notice may be taken." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## APPLICATION

Although defendants seek to dismiss the case on multiple grounds, subject-matter jurisdiction is a threshold issue that must be addressed prior to adjudicating the merits. *See e.g., Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008).

Under Section 9(c)(1) of the Labor Act, codified as 29 U.S.C. § 159, the NLRB is charged with representative decisions such as certifying a bargaining representative. The responsibilities under Section 9 have long been held to include the authority to clarify bargaining units and modify existing unit determinations. *See Locomotive Firemen & Enginemen (Ind.)*, 145 N.L.R.B. 1521, 1523 (1964). The Board's Rules and Regulations allow for labor organizations or employers to file petitions for unit clarification even in the absence of "a question of representation." *See* 29 C.F.R. § 102.60(b).

Typically, district courts do not have jurisdiction to review Board decisions in representation proceedings. *Boire v. Greyhound Corp.*, 376 U.S. 473, 477 (1964). Determinations by the Board pursuant to Section 9(c), including clarification orders, are subject to review by courts of appeals only as they provide the bases for findings of unfair labor practices. *Smith Steel Workers v. A.O. Smith Corp.*, 420 F.2d 1, 9 (7th Cir. 1969).

District courts, however, have jurisdiction to overturn Board decisions in extraordinary circumstances, as outlined in *Leedom v. Kyne*, 358 U.S. 184, 188-89 (1958). Under *Leedom*, the Supreme Court noted that district courts have jurisdiction "to strike down an order the Board

made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Leedom*, 358 U.S. at 188. This basis of jurisdiction is "a narrow one," *New York Racing Assoc. v. N.L.R.B.*, 708 F.2d 46, 55 (2d Cir. 1983), and the Supreme Court noted that it only applies where, absent district court review, the Board's actions "would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights." *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).

When examining *Leedom*, federal courts routinely emphasize that it is an "exception of very limited scope, to be invoked only in exceptional circumstances." *Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 379-80 (S.D.N.Y. 2015) (collecting cases). To establish that this court has jurisdiction under *Leedom*, plaintiff must, at the minimum, demonstrate that "the NLRB has acted contrary to a specific mandate of the [Act]." *United Fed. of Coll. Teachers v. Miller*, 479 F.2d 1074, 1075 (2d Cir. 1973). This demonstration must be "strong and clear," *McCulloch v. Libbey-Owens-Ford Glass Co.*, 403 F.2d 916, 917 (D.C. Cir. 1968), and there must be a "*plain* violation of an unambiguous and mandatory provision of the statute, *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 293 (5th Cir. 1999) (quotation marks omitted) (emphasis added).

Plaintiff alleges that the Board violated Section 8(d) of the NLRA, codified as 29 U.S.C. § 158(d), and acted in excess of its statutory power when the Regional Director issued its decision on the unit clarification petition before her. This provision of the NLRA prohibits the Board from compelling any party to make a concession or agree to a proposal. 29 U.S.C. § 158(d). Plaintiff argues that the unit clarification effectively nullified the after-acquired store clauses in the governing CBAs for both the 1180 Madison Avenue location and all new stores that would fall within the scope of these clauses. Pl.'s Mem. at 9. Specifically, plaintiff initially

contended that the Board's decision requires the Unions to gain representation of employees of the new stores solely through a Board election, at which point the employees would be governed as a separate bargaining unit from those initially outlined in the CBAs. *Id.* at 9-14. Simply put, the Union is mistaken in its interpretation of the Board's decision. For this reason, the Court rejects these theories and finds that they fail to establish jurisdiction under *Leedom*.

Plaintiff's flawed contentions seem to stem from a misunderstanding of the NLRB's limited task in the unit clarification process. Namely, the Regional Director's decision regarding the unit clarification petition had no bearing on the status or interpretation of the after-acquired store clause. Both sides agree that after-acquired clauses cause an employer to waive its right to demand an election, *Houston Div. of the Kroger Co. (Kroger)*, 219 N.L.R.B. 388, 389 (1975), and that employees of the location covered by the after-acquired clause are added to the existing unit upon a demonstration of majority support, *see Alpha Beta Co.*, 294 N.L.R.B. 228, 229 (1989).

Although the Regional Director, in her decision, noted that the Unions failed to make a demonstration of majority support in the new location, it was not interpreting the after-acquired store clauses. Instead, Brooks Brothers sought to clarify the units represented by Local 340 and Local 25 so that the employees at the newly opened 1180 Madison store would not be included into the existing units. Meanwhile, the Union sought to dismiss the employer's petition and have these employees clarified into the existing units through accretion. The standards for accretion and unit clarification differ from the applicable standard for including employees through an after-acquired store clause. Under the after-acquired store clause, the unions were required to collect authorization cards from a majority of employees it wished to represent. *Alpha Beta*, 294 N.L.R.B. at 229. Meanwhile, accretion and unit clarification for initial representation share a

near identical, but much higher standard. *See Staten Island Univ. Hosp. v. N.L.R.B.*, 24 F.3d 450, 454 (2d Cir. 1994) (noting that "the degree to which employees in separate locations share a community of interests" is the same basic concern for both accretion and unit determination findings). Accreting through a unit clarification requires demonstrating that an overwhelming community of interests between a smaller group of employees and a larger group exists such that the new employees do not possess a distinct identity of their own. *Id.* at 455; *see also Super Valu Stores*, 283 N.L.R.B. 134, 136 (1987). Meanwhile, unit clarification in cases where a unit does not currently exist requires a substantial community of interests among a group of employees to support casting them as a unit. *See Staten Island Univ. Hosp.*, 25 F.3d at 455; *Melbet Jewelry*, 180 N.L.R.B. 107, 110 (1969).

In sum, the Regional Director's decision did not, in any manner, impact the Union's rights to enforce the after-acquired store clauses in the CBAs. Instead, the Regional Director addressed the narrow question before her, and issued a decision that was circumscribed to the issue of accretion through unit clarification. Moreover, the Board's decision does not preclude the plaintiff from making a demonstration of majority support pursuant to the after-acquired clause.[5] For these reasons, the Court finds no merit to plaintiff's arguments regarding the alleged threat the Regional Director's decision poses to the viability of the after-acquired clauses.

In the Union's opposition memorandum to the motion to dismiss, it presents alternative arguments.[6] Plaintiff claims that since the CBAs contained after-acquired clauses, the Board

---

[5] Plaintiff concedes as much in its submissions filed after the complaint and initial moving papers. Pl.'s Opp. at 1-2. As noted in *supra* note 4, the Board stated in their September 21, 2015 Order that their denial of review does not preclude the Union from seeking to include the employees of the 1180 Madison Avenue store from the current bargaining units either from through a showing of majority status pursuant to their *Kroger* clause or by filing a representation petition. Plaintiff also notes that since filing the complaint, they have actually filed for arbitration to demonstrate majority support, and that "the main issue with regard to the Motion for Preliminary Injunction has been corrected." Pl.'s Opp. at 2.

[6] Defendants contend that these arguments should be dismissed because plaintiff's memorandum in opposition to the motion to dismiss is essentially a reply to her motion for preliminary injunction. Def.'s Reply at 1-2. As a general

11

violated Section 8 of the NLRA by processing the unit clarification petition in a representation hearing. Pl.'s Opp. at 5-8. Moreover, plaintiff contends that the Regional Director should have refused to hear the unit clarification petition in light of the arbitration procedures outlined in the CBAs. *Id.* at 10-13. Plaintiff's arguments on this point are unclear, but they nonetheless fail to establish a violation of the NLRA that would warrant jurisdiction under *Leedom*.

First, plaintiff contends the law in *Kroger* implies that an after-acquired clause serves as a waiver of an employer's right to use the hearing processes in a representation proceeding. Pl.'s Opp. at 5-6. Plaintiff supports this position by pointing to case law indicating that the Board generally dismisses unit clarification petitions submitted during the term of a CBA where the contract clearly defines the unit. *Id.* at 6-7. The cases that plaintiff cites are inapposite since none of them involve an after-acquired clause. *See Stanford Hosp. & Clinics v. N.L.R.B.*, 370 F.3d 1210, 1214 (D.C. Cir. 2004); *Consol. Papers, Inc. v. N.L.R.B.*, 670 F.2d 754, 757 (7th Cir. 1982); *Sunoco, Inc.*, 347 N.L.R.B. 421, 421 (2006); *Central Parking Sys., Inc.*, 335 N.L.R.B. 390, 391 (2001). Where similarities exist, the cases undermine plaintiff's point that accretion issues should be heard in an unfair labor practice hearing. In *Stanford Hospital* and *Consolidated Papers*, the courts of appeals unequivocally noted the impropriety of increasing the bargaining units during the term of a contract where the bargaining unit is clearly defined. Thus, to the extent that these cases bear on the facts before us, they actually indicate that the Regional Director was correct to reject plaintiff's attempt to accrete the 1180 Madison Avenue employees

---

rule, new arguments may not be made in a reply brief. *See DSND Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 339, 347 (S.D.N.Y. 2008). However, the Second Circuit has made it abundantly clear that a district court has *discretion* to consider a belatedly-raised argument. *Am. Hotel Int'l Gro., Inc.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (emphasis in original) (citing *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)). Here, it is not evident that plaintiff's latest submission is primarily a reply, and, in any case, defendants have had an opportunity to respond to the new arguments brought by plaintiff. Additionally, the Court finds that these new arguments fail to establish jurisdiction under *Leedom*. For these reasons, the court will exercise its discretion to address the merits of the plaintiff's alternative arguments.

into the existing units. In any case, none of the cases or arguments presented by plaintiff indicate how the Board deviated from established law in such a plain way to grant jurisdiction.

Second, plaintiff argues that the Board compelled a concession when the Regional Director found that the parties did not specifically agree to arbitrate unit clarification issues. Pl.'s Opp. at 10. Plaintiff admits that there was no explicit agreement to submit these issues to an arbitrator. *Id.* Nonetheless, the Union argues that much like the after-acquired store clause grants a waiver of an employer's right to a Board ordered election, this clause also implies a union's right to be free from the representation process. *Id.* at 5, 12. This argument finds no support in the law. Under Board precedent, after-acquired store clauses do not infer a waiver of access to Board processes for determining questions of majority and other representation issues such as whether a unit is appropriate. *See Shaw's Supermarkets*, 343 N.L.R.B. 963-64 (2004). Regardless, even if such a right existed, its novelty and implicit nature leave it inadequate to overcome the exacting standards of *Leedom*.

The remaining arguments in plaintiff's moving papers address the second prong of *Leedom*. Since the plaintiff was incapable of demonstrating that the Board violated a clear statutory mandate, it is not necessary to discuss whether the Union had access to a forum for reviewing the Regional Director's decision on the unit clarification petition.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is GRANTED and plaintiff's motion for injunctive relief is DENIED. The clerk of court is respectfully requested to close this case.

**SO ORDERED.**

**Dated:**     New York, New York
            March 31, 2016

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**